UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**National Presto Industries, Inc.,**

    *Plaintiff*,

v.                                                                          Case No. 3:19-cv-272
                                                                             Judge Thomas M. Rose

**Performance Food Group, Inc., and Ohio Pizza Products, L.L.C.,**

    *Defendants*.

---

**ENTRY AND ORDER DENYING MOTION TO DISMISS BY DEFENDANTS OHIO PIZZA PRODUCTS, LLC, AND PERFORMANCE FOOD GROUP, INC. ECF 14.**

---

Plaintiff National Presto Industries has sued Performance Food Group and Ohio Pizza Products, LLC for claims stemming from an alleged violation of a settlement agreement and alleged new violations of Plaintiff's trademark. Defendants have moved the Court to dismiss the case. (ECF 14).

**I.  Background**

Plaintiff National Presto Industries, Inc., alleges it owns and has used its PRESTO mark in connection with the advertising, promotion, and sale of food preparation equipment and kitchenware for more than 70 years. See Compl., at ¶¶ 11-16 (ECF 1, PageID 5).

Defendant Ohio Pizza supplies food preparation equipment. See id., at ¶ 18 (ECF 1, PageID 5). In 2006, Ohio Pizza sought to register the mark AMERICA'S FAVORITE FOODS PRESTO for "Distributorships in the field of pizza, [I]talian and deli food products." See id., at ¶ 19 (ECF

1

1, PageID 5). Upon learning of Ohio Pizza's efforts to register that mark, National Presto filed a Notice of Opposition (the "391 Opposition") alleging that the use of AMERICA'S FAVORITE FOODS PRESTO (i) is confusingly similar to the National Presto Marks; (ii) is likely to cause deception as to the nature or origin of Ohio Pizza's goods; and (iii) dilutes the distinctive nature of National Presto's National Presto Marks. See id., at ¶ 20 (ECF 1, PageID 5).

On June 29, 2009, Ohio Pizza and National Presto resolved that dispute, entering into a Settlement Agreement and Withdrawal of Opposition. See Compl., at ¶ 21 (ECF 1, PageID 6); see also Settlement Agreement, Compl., Ex. G (ECF 1, PageID 57-64). Under this Settlement Agreement, Ohio Pizza agreed,

> (A) not to sell food preparation equipment, kitchen appliances, or utensils to the retail or institutional markets in connection with the Ohio Pizza Mark, or any trademark, service mark or trade name that includes or consists of the word "presto."
>
> (B) … to use reasonable commercial efforts to avoid confusion between the Ohio Pizza Mark, as well as any other trademarks, service marks or trade names used by Ohio Pizza (including future marks or names) that include or consist of the word "presto," and the trademarks or service marks of National Presto that include or consist of the word "presto."

Settlement Agreement, Compl., Ex. G, Sections 1.A.-B (ECF 1, PageID 58).

The parties' Coexistence Agreement contains a cure provision that states in pertinent part that Plaintiff may challenge Ohio Pizza's use of PRESTO if:

> Prior to [Plaintiff] taking any action, either in the United States Patent and Trademark Office or before a court or other judicial tribunal, [Plaintiff] attempts to resolve such actual confusion or perceived likelihood of confusion by working diligently and in good faith with Ohio Pizza to resolve such confusion or likelihood of confusion; in such a circumstance, Ohio Pizza agrees to work in good faith with [Plaintiff] . . . .

2

Ex. G to Compl. § 2.D, at 59.

National Presto alleges that, as consideration for Ohio Pizza's promises, it agreed to withdraw the 391 Opposition, and consented to Ohio Pizza's registration of the AMERICA'S FAVORITE FOODS PRESTO mark. See id., Sections 2.A & 2.C (ECF 1, PageID 58-59). National Presto alleges, however, that it expressly reserved the right to challenge the use or registration of any future trademark or service mark that includes or consists of the word "presto," in the event that such future mark causes or is likely to cause confusion. See id., Section 2.D (ECF 1, PageID 59).

In May 2017, Defendant Performance Food Group, Inc., a nationwide distributor of food and food preparation equipment, merged with Ohio Pizza. See Compl., at ¶ 32 (ECF 1, PageID 7-8). National Presto alleges that, as a result of that transaction, Performance Food Group assumed the liabilities and obligations of Ohio Pizza. See id. at ¶¶ 32- 40, 109-114 (ECF 1, PageID 8-9; 18-19); see also Settlement Agreement, Compl., Ex. G, Section 4.C. (ECF 1, PageID 60) (expressly providing that the Settlement Agreement "shall inure to the benefit of, and shall be binding upon the Parties [and their] successors and assigns . . . .")

On June 2, 2018, Performance Food Group filed U.S. Application Serial No. 87/945,869 (the "'869 Application"), seeking to register PRESTO for "distributorships in the field of pizza, Italian, and deli food products" in International Class 035 on the Principal Register of the U.S. Patent and Trademark Office. See Compl., at ¶ 41 (ECF 1, PageID 9); see also Compl., Ex. J (ECF 1, PageID 73-81). National Presto alleges that the '869 Application is virtually identical to the PRESTO mark. (See Compl., at ¶ 41 (ECF 1, PageID 9), and Compl., Exs. A, B, C (ECF 1, PageID 23-30). As a result, National Presto alleges that the mark in the '869 Application is so identical

3

to the National Presto mark that it would cause confusion with the National Presto mark. See id. Moreover, National Presto alleges that Defendants were selling food preparation equipment and kitchen appliances and utensils in connection with the word "PRESTO," in an alleged further breach of the Settlement Agreement. See Compl., at ¶ 42 (ECF 1, PageID 9).

On December 17, 2018, National Presto's counsel sent Defendants a cease and desist letter regarding Defendants' use of "Presto." See id., at ¶ 43 (ECF 1, PageID 9); see also Cease and Desist Letter, Compl., Ex. K (ECF 1, PageID 83-85). The letter claims Defendants breached the Settlement Agreement by selling food preparation equipment and kitchen appliances in connection with the word "Presto," and by filing the '869 trademark application. See id. National Presto further claimed that Defendants' "use of the 'PRESTO' mark constitutes not only a breach of contract, but also trademark infringement and various forms of unfair competition, under both the Lanham Act (Title 17 United States Code) and common law." Id. National Presto demanded that Defendants "immediately cease and desist utilizing the PRESTO mark in connection with their businesses," and that "Defendants "abandon its '869 App. and stop[] use of the word 'Presto' in connection with food preparation equipment, kitchen appliances or utensils to the retail or institutional markets." Id.

Plaintiff alleges Defendants remain in breach of the Settlement Agreement. While Defendants appeared to have removed references to "PRESTO" in association with their equipment, appliances, and utensils, see Compl., at ¶ 49 (ECF 1, PageID 10), Plaintiff contends that the extent of that breach of the Settlement Agreement remains unknown, and that breach also is undisputed. Meanwhile, Defendants refuse to abandon their '869 Application, which is identical to National Presto's PRESTO mark, and will allegedly cause confusion with the National

4

Presto Marks in breach of the Settlement Agreement and allegedly in violation of federal and state intellectual property laws.

After issuing the Cease and Desist Letter, National Presto alleges it further attempted to resolve this dispute through phone calls and correspondence with Defendants over the winter and spring of 2019. Despite efforts to resolve this dispute, Plaintiff contends Defendants remain in breach of the Settlement Agreement by continuing to pursue the registration of the '869 Application Mark, consisting solely of the word "PRESTO." See Compl., at ¶ 50 (ECF 1, PageID 10-11).

National Presto filed their complaint on September 3, 2019. National Presto alleges 1) breach of contract; 2) federal trademark infringement; 3) trademark infringement under Ohio common law; 4) federal unfair competition and false designation of origin; 5) unfair competition under Ohio common law; 6) deceptive trade practices under the Ohio Deceptive Trade Practices Act; and 7) successor liability. See generally Compl. (ECF 1). Defendants have moved for dismissal of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See generally Motion to Dismiss (ECF 14).

**II.     Standard**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also, *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 546 (6th Cir. 2007). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Ashcroft*, 129 S. Ct. at 1949.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[W]here materials are central to the claims asserted, a defendant may introduce these materials if the plaintiff fails to do so" without converting a motion to dismiss for failure to state a claim into a motion for summary judgment. *Dials v. Watts Bros. Moving & Storage Sys., Inc.*, No. C2-03-513, 2003 U.S. Dist. LEXIS 21413, at *7 (S.D. Ohio Nov. 24, 2003).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *JM Adjustments Servs.*, *LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2016 U.S. Dist. LEXIS 94242, at *8 (E.D. Mich. July 20, 2016) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). A motion to dismiss "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

**III.   Analysis**

Defendants move for dismissal of National Presto's breach of contract claim asserting that National Presto failed to plead a cognizable claim.  National Presto asserts it alleged a viable breach of contract claim.

Under Ohio Law, a breach of contract claim requires: 1) formation of a binding contract; 2) that the non-breaching party performed its contractual obligations; 3) that the breaching party failed to fulfill its contractual obligations without legal excuse; and 4) that the non-breaching party suffered damages as a result of the breach. See *Carbone v. Nueva Constr. Group, L.L.C.*, 83 N.E.3d 375, 380 (Ohio App. 8th Dist. 2017).   National Presto alleged each of those elements.

First, National Presto alleged that the Settlement Agreement is a binding and enforceable contract. See Compl., at ¶ 64 (ECF 1, PageID 12).  Second, National Presto alleged that it has fulfilled all of its material obligations and otherwise fully performed under the Settlement Agreement. See id., at ¶ 65 (ECF 1, PageID 12).  Third, National Presto alleged that Defendants failed to fulfill their contractual obligations without legal excuse by, among other acts and omissions:

> • Failing to use reasonable commercial efforts to avoid confusion between the National Presto Marks and Defendants' mark and use of the word "Presto," See id., at ¶ 66 (ECF 1, PageID 12-13);
>
> • Selling food preparation equipment, kitchen appliances, and/or utensils in connection with the word "PRESTO," See id., at ¶ 67 (ECF 1, PageID 13);
>
> • Using "PRESTO" by itself without "America's Favorite Foods" in connection with Defendants' distribution services; See id., at ¶ 68;
>
> • Selling food preparation equipment, kitchen appliances, and/or utensils in connection with the mark "America's Favorite Foods Presto," See id., at ¶ 69; and

7

> • Filing the '869 Application to register the Alleged Presto Mark, which consists solely of the word "PRESTO", is identical to National Presto's PRESTO mark, and will therefore cause confusion with the National Presto Marks. See id., at ¶ 70.

Finally, National Presto alleged that it has been injured as a direct and proximate result of Defendants' breaches of the Settlement Agreement. See id., at ¶ 71.

Defendants argue that National Presto did not properly allege the third element—breach—pertaining to one aspect of its breach of contract claim; and that National Presto's breach of contract claim is barred because Defendants cured their breach of the Settlement Agreement and, therefore, National Presto did not sustain a cognizable injury.

Defendants urge this Court to dismiss National Presto's breach of contract claim on the grounds that the Settlement Agreement expressly permits Defendants' use of "Presto" and registration of the '869 Application Mark.  Defendant asserts that the Settlement Agreement permits National Presto to pursue the trademark and unfair competition claims alleged in its Complaint.  The Settlement Agreement states "National Presto reserves the right to challenge [the] use or registration of any future trademark or service mark of [Defendants] that includes or consists of the word "presto" and is used in connection with [Defendants'] Services or other goods or services," See Settlement Agreement, Ex. G to Compl., § 2D (ECF 1, PageID 59).  Defendant asserts the phrase "consist of" allows the stand alone use of "Presto."  This is not self-evident, as the phrase connotes a non-exhaustive list when lacking an adverb such as "solely."

Case law suggests the opposite.  "Dictionaries, the Code, and caselaw all show that 'consists of' can introduce either an exhaustive list or a non-exhaustive list." *Patients Mut. Assistance Collective Corp. v. Comm'r of Internal Revenue*, 151 T.C. 176, 196 (2018).  Merriam-webster.com agrees that it implies a list of constituent parts, "to be composed or made up —usually

8

used with 'of.' Breakfast consisted of cereal, milk, and fruit. The team consists of five players." https://www.merriam-webster.com/dictionary/consist. Defendants' proposed definition is not to the contrary, as it refers to plural constituent parts: "things" and "people." See ECF 14-1, PageID 144 ("see also Merriam-Webster Dictionary (defining 'consist of' to mean 'to be formed or made up of (specified things or people)'")).

It is also possible that "includes or consists" forms a hendiadys, "a figure of speech in which two terms, separated by a conjunction, are melded together to form a single complex expression." Samuel L. Bray, "*Necessary and Proper" and "Cruel and Unusual": Hendiadys in the Constitution*, 102 VA. L. REV. 687, 695 (2016).

Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court. *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (applying Ohio law); *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991) (applying Ohio law); see also *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc*., 15 Ohio St.3d 321, 474 N.E.2d 271, 272–73 (1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term."). "The role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cty. Bd. of Commrs*., 115 Ohio St.3d 387, 875 N.E.2d 561, 566 (2007). See also *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). The intent of the parties being ambiguous, discovery is necessary.

As Defendant points out, the Settlement Agreement conditions use and registration of the Presto mark on an affirmative duty to use reasonable commercial efforts to avoid confusion between Defendants' use of "Presto" and registration of the '869 Application Mark, and the National Presto Marks. To that end, the Settlement Agreement expressly provides:

> Ohio Pizza agrees to use reasonable commercial efforts to avoid confusion between the Ohio Pizza Mark, as well as any other trademarks, service marks or trade names used by Ohio Pizza (including future marks or names) that include or consist of the word "presto," and the trademarks or service marks of National Presto that include or consist of the word "presto."

Ex. G. to Compl., § 1.B (ECF 1, PageID 58).

National Presto alleges that Defendants breached that provision of the Settlement Agreement by failing to use reasonable commercial efforts to avoid confusion between Defendants' use of "Presto" and their registration of the '869 Application Mark, and the National Presto Marks, alleging in the Complaint:

> Defendants breached the Settlement Agreement by not using reasonable commercial efforts to avoid confusion between the National Presto Marks and Defendants' mark and use of the word "Presto." Defendants not only changed their mark from "America's Favorite Food Presto" to just "Presto," but they also expanded their goods and services in connection with just "Presto." So instead of making sure that they avoided confusion, Defendants took active steps to make it seem as if the parties are related.

See Compl., at ¶ 66. (ECF 1, PageID 12-13). National Presto alleged that Defendants failed to use reasonable commercial efforts to avoid confusion between the National Presto Marks and Defendants' use of the word "Presto" and their registration of the '869 Application Mark.

In its Complaint, National Presto alleged not only that Defendants breached the Settlement Agreement by failing to honor their obligations to use reasonable commercial efforts to avoid

10

confusion, but that Defendants took intentional and willful actions to make it seem as though National Presto and the Defendants are related. See Compl., at ¶ 66. (ECF 1, PageID 12-13); see also id. at ¶ 57 (ECF 1, PageID 11) (alleging that Defendants "are using "PRESTO" alone and adopted the '869 Application Mark in bad faith with a deliberate intent to trade on the extraordinarily valuable goodwill symbolized by National Presto's PRESTO mark."). Therefore, National Presto alleges in the Complaint that Defendants breached the Settlement Agreement by failing to use reasonable commercial efforts to avoid confusion between the National Presto Marks and Defendants' use of the word "Presto" and their registration of the '869 Application Mark. Those allegations satisfy the pleading standards necessary to defeat a motion to dismiss under Rule 12(b)(6), and the Defendants' Motion will be denied with regard to the breach of contract claim. See *Philadelphia Indem. Ins. Co.*, 732 F.3d at 649 (to survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.")

Defendants next assert that National Presto's breach of contract claim is barred by the Settlement Agreement because Defendants have ceased that activity in response to the Cease and Desist Letter. Defendants argue that National Presto cannot proceed on that aspect of its breach of contract claim because, according to Defendants, National Presto did not sustain a cognizable injury, because Defendants "fixed" their breach.

The Settlement Agreement, however, does not support this. National Presto pleaded a cognizable injury as required under the applicable pleading standards. While National Presto alleged in its Complaint that, in "January 2019, in accordance with the Settlement Agreement, Defendants removed references to "PRESTO" in association with their equipment, appliances, and

11

utensils," Compl., at ¶ 49 (ECF 1, PageID 10), Defendants' use of "PRESTO" allegedly constitutes a breach of the Settlement Agreement. National Presto also pleaded that it sustained an injury as a result of such breach. See id., at ¶ 62 (ECF 1, PageID 12), 71 (ECF 1, PageID 13). National Presto has alleged each of the four elements necessary to plead a viable breach of contract claim, and Defendants' Motion will be denied.

Defendants next challenge National Presto's trademark and unfair competition claims, arguing that those claims are barred by the Settlement Agreement because, Defendants assert, National Presto did not comply with the dispute resolution provisions under the Settlement Agreement. Defendants' argument is unpersuasive because National Presto expressly reserved the right to pursue its trademark and unfair competition claims so long as (a) it has a good faith opinion that Defendants' use of "Presto" is likely to cause confusion in the market, and (b) National Presto diligently attempts to resolve the dispute with Defendants before commencing the suit. National Presto has alleged a good faith opinion that Defendants' conduct has created a likelihood of confusion between Defendants' use of "Presto" and registration of the '869 Application Mark, and the National Presto Marks, and National Presto diligently attempted to resolve this dispute with Defendants.

Further, National Presto allegedly complied with its obligations under the Settlement Agreement to work diligently and in good faith with Defendants to resolve this dispute. The Complaint alleges that, National Presto sent Defendants the Cease and Desist Letter upon learning of Defendants' use of "Presto." See Compl., at ¶ 43 (ECF 1, PageID 9); see also Cease and Desist Letter, Compl., Ex. K (ECF 1, PageID 83-85). After issuing the Cease and Desist Letter in December 2018, National Presto attempted to resolve this dispute through phone calls and

correspondence with Defendants over the following six months. Defendants, however, allegedly refused to cease their conduct, and National Presto filed this suit. Therefore, National Presto alleges that it fulfilled its obligations to attempt to resolve this dispute by working diligently and in good faith with Defendants. See Ex. G to Compl., § 2D(ii) (ECF 1, PageID 59). National Presto is therefore authorized to exercise its rights under Section 2.D. of the Settlement Agreement by pursing its trademark and unfair infringement claims, and Defendants' Motion will be denied.

Finally, Defendants request that the Court strike National Presto's allegations of willfulness and corresponding damages. Defendants' request is premised on the theory that the underlying claims that are alleged to be willfully committed were not actionable. As explained, they are. National Presto has alleged each of its claims—including the willful and intentional nature of Defendants' corresponding actions—and those allegations are accepted as true at this stage of the litigation. See Compl., at ¶¶ 2, 57, 66, 76, 86, 92, 98, 103 (ECF 1, PageID 2; 11-18) (alleging willful, deliberate, and intentional actions of Defendants); see also *Morgan*, 829 F.2d at 12 (allegations in Complaint taken as true when considering motion to dismiss under Rule 12(b)(6)). Therefore, Defendants' Motion will be denied.

**IV.** **Conclusion**

Because Plaintiff has properly pleaded all of its claims, the Court **DENIES** Defendants' Motion to Dismiss (ECF 14)

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, August 14, 2020.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE